UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GENNADY SOROCHKIN,

               Petitioner,

    v.

FERETI SEMAIA, et al.,

               Respondents.

Case No. 5:26-cv-01638-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is the counseled, Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Gennady Sorochkin ("Petitioner") asserting four grounds for relief: (1) detention in violation of 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause; (2) re-detention in violation of the governing regulations; (3) re-detention in violation of the Fifth Amendment's procedural due process protections; and (4) re-detention in violation of the Fifth Amendment's substantive due process protections. Dkt. No. 1. Petitioner also filed a motion for temporary restraining order ("TRO"). Dkt. No. 4. Respondents filed a response stating that they are not presenting an opposition argument, Dkt. No. 11, and on April 14, 2025, the Court conducted a hearing, at which Respondents reiterated that they are not presenting an opposition argument.

## I.     The Petition

Petitioner was born in 1961 in the former U.S.S.R., in the city of Kharkiv, which is located in present-day Ukraine.  Dkt. No. 1, Petition ¶ 1. According to Petitioner, in 1979 he left the U.S.S.R. and arrived in Toronto, Canada.  *Id.* ¶ 21.  In 1991, the U.S.S.R. dissolved.  *Id.* ¶ 1.  In 1992, Petitioner was lawfully admitted into the United States at Niagara Falls, New York, on an H1-B visa.  *Id.* ¶ 22.  In 1999, Petitioner was convicted of 18 U.S.C. § 922(g)(5), alien in possession of a firearm.  *Id.* ¶ 24.  After he completed his sentence, he was transferred to ICE custody for removal proceedings.  *Id.* ¶ 25.

On May 1, 2001, Petitioner was ordered removed.  *Id.* ¶ 27.  Petitioner remained in immigration custody for the next three months and seventeen days while ICE tried unsuccessfully to remove him to the Ukraine.[1]  *Id.* Petitioner states that he was not removed because the Ukraine did not and does not recognize him as a citizen or national of Ukraine, in accordance with Ukrainian law as a person who left Ukraine before November 13, 1991.  *Id.*

On August 17, 2001, Petitioner was released from ICE custody on an order of supervision ("OSUP"), after finding that his removal was not reasonably foreseeable.  *Id.*   Petitioner alleges, and the government does not contest, that since his release he has complied with all conditions and has annually attended his ICE check-ins without violations.  *Id.* ¶ 28.  Since August 2001, Petitioner has had no arrests, convictions, or negative interactions with law enforcement.  For the last 25 years, he has lived in Santa Monica, California with his sister.  *Id.*

---

[1] Petitioner attached to his application for a temporary restraining order a copy of a letter dated February 24, 1999, to his counsel from the Consulate of Ukraine stating that "regarding Jewish gentleman, who left Ukraine in 1979 and who is going to be returned to Ukraine, please be advised that in accordance with the Ukranian law, the person who left Ukraine before November 13, 1991 for the permanent residence is not a citizen of Ukraine, and cannot be deported to Ukraine."  Dkt. No. 4 at 40.

Petitioner asserts that ICE has attempted multiple times in the past to obtain travel documents from the Ukrainian consulate, which has repeatedly advised ICE that Petitioner is not recognized as a Ukrainian citizen because he left before the U.S.S.R. dissolved. *Id.* ¶ 30.

On December 2, 2025, while attending his routine ICE check-in, Petitioner was re-detained and transferred to the Adelanto ICE Processing Center, where he remains today. *Id.* ¶ 32. ICE provided no advanced notice of his re-detention or evidence of "changed circumstances." *Id.* Petitioner was handed a Notice of Revocation of Release (the "Notice") which states, among other things, that he would "promptly be afforded an informal interview" to respond to reasons for his revocation.[2] *Id.*; Dkt. No. 4 at 42–44. Petitioner asserts, and the government does not contest, that he did not receive an interview. Dkt. No. 1 ¶ 32. The Notice also states that Petitioner would receive a post-order custody review after 90 days of detention, which was scheduled to fall on March 2, 2026. *Id.* Petitioner did not receive a custody review and asserts he has had no further contact or communication from ICE personnel since his re-detention on December 2, 2025. *Id.* ¶ 33. The facts in the Verified Petition are uncontested.

## II.   Discussion

### A.   No Significant Likelihood of Removal in the Reasonably Foreseeable Future

The Petition's first ground for relief is that under 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause, Petitioner's removal is not reasonably foreseeable, and as such, he should be released.

---

[2] The Notice states that on May 1, 2001, Petitioner was ordered removed to Ukraine, or in the alternative, to Canada. Dkt. No. 4 at 42.

3

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022).  Under section 1231(a), a noncitizen ordered removed must be detained for 90 days pending the government's efforts to secure the noncitizen's removal through negotiations with foreign governments. *See* 8 U.S.C. § 1231(a)(2).  Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).  The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id.* at 689.

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final.  533 U.S. at 701.  "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  "If removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.  In that case, of course, the [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

Petitioner is subject to a final removal order and has been detained by immigration authorities for more than four months (since December 2, 2025) and cumulatively for nearly eight months since being ordered removed. Courts interpreting *Zadvydas* have held that the six-month period is cumulative. *See Sied v. Nielsen*, 2018 WL 1876907 at *6 (N.D. Cal. Apr. 19,

2018) ("[T]he six-month period does not reset when the government detains a[] [noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again."); *Sam Lahooti v. Kristi Noem, et al.*, No. 2:26-CV-00171-SK, 2026 WL 700538 at *2 (C.D. Cal. Mar. 5, 2026). Significantly, Petitioner shows that for nearly twenty-five years, the Government has been unable to remove him to Ukraine because he left the former U.S.S.R. prior to 1991 and thus is not recognized as a Ukrainian citizen. Therefore, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents provide no contrary evidence or argument, and therefore fail to rebut this showing.

On this record, the Court finds there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. Therefore, the Court grants Petitioner's first claim under 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause, and orders him to be immediately released. Accordingly, the motion for TRO is denied as moot. Dkt. No. 4.

### B. Remaining Claims

Because the Court concludes that Petitioner is entitled to release on the first ground, it declines to address the remaining three claims for relief asserted in the Petition. Accordingly, grounds two, three, and four are dismissed without prejudice.

## III. Order

For the foregoing reasons, the Petition is GRANTED as to the first claim under 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause. The remaining three claims for relief are dismissed without prejudice.

The Court Orders the relief set forth below, which Respondents do not oppose:

5

1.      Respondents shall release Petitioner forthwith from custody under the conditions of Petitioner's prior supervised release.

2.      Respondents may not re-detain Petitioner unless they:

a.      First establish, at a hearing before a neutral adjudicator, that Petitioner is a flight risk or a danger to the community such that re-detention is warranted, or

b.      (1) Obtain a valid travel document, (2) provide the travel document to Petitioner and Petitioner's counsel, (3) offer Petitioner the opportunity to leave the country on their own within two months, and (4) Petitioner fails to leave the country within that two-month period.  Under such circumstances, Respondents may re-detain Petitioner, provided they have already made concrete arrangements for Petitioner to be put on a flight to the Ukraine.

3.      Respondents may not remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the Immigration and Nationality Act and due process, which should minimally include written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

IT IS SO ORDERED.

DATED: April 14, 2026

*Patricia Donahue*

_____
Patricia Donahue
United States Magistrate Judge

6